1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8  WASTE ACTION PROJECT,                    )
                                            )
9              Plaintiff,                   )    Case No. 2:17-cv-00498-RSM
   v.                                       )
10                                          )
   FRUHLING SAND & TOPSOIL, INC.,           )    CONSENT DECREE
11                                          )
               Defendant.                   )
12 _____)

13

14                    **I.    STIPULATIONS**

15         WHEREAS, Plaintiff Waste Action Project filed a second amended complaint against

16  Defendant Fruhling Sand & Topsoil, Inc. ("Fruhling") alleging violations of the Clean Water Act

17  ("CWA"), 33 U.S.C. § 1251 et seq., at Fruhling's facility located at 1010 228th Street SW,

18  Bothell, WA 98021 (the "Property"), and seeking declaratory and injunctive relief, civil

19  penalties, and attorneys' fees and costs. Dkt. 40. Fruhling's activities and operations on the

20  Property, along with the Property, are referred to as the "Facility."

21         WHEREAS, the parties executed and filed a "Stipulation of Facts and Issues" stipulating

22  to, among other things, Fruhling's discharges of arsenic-contaminated water to Crystal Creek via

23  point source without NPDES permit authorization in violation of the Clean Water Act (referred

24  to herein as the "unpermitted pollutant discharge"). Dkt. 55.

25

26

*Smith & Lowney, p.l.l.c.*
*2317 East John St.*
*Seattle, Washington 98112*
*(206) 860-2883*

4837-6461-4319

1    WHEREAS, Fruhling and the Washington State Department of Ecology ("Ecology")

2    have entered into an Agreed Order Docket No. 16479 (the "Agreed Order"), attached hereto as

3    Exhibit A and incorporated herein by this reference, effective October 18, 2019.

4    WHEREAS, the Property is for sale and Fruhling is in negotiations with a prospective

5    buyer for the Property.

6    WHEREAS, Waste Action Project and Fruhling agree that settlement of these matters is

7    in the best interest of the parties and the public, and that entry of this Consent Decree is the most

8    appropriate means of resolving this action.

9    WHEREAS, Waste Action Project and Fruhling stipulate to the entry of this Consent

10   Decree without trial or adjudication of any issues of fact or law regarding Waste Action Project's

11   claims that remain undecided or unstipulated, and without any admissions other than those

12   expressly provided in this Consent Decree.

13   DATED this 24 th day of December, 2019

14
15   MILLER NASH GRAHAM & DUNN LLP          SMITH & LOWNEY PLLC

16   By  s/Douglas Morrison                 By  s/Marc Zemel
     Douglas Morrison, WSBA #18769         Marc Zemel, WSBA #44325
17   Attorneys for Defendant               Attorneys for Plaintiff
     Fruhling Sand & Topsoil, Inc.         Waste Action Project
18
19
20   FRUHLING SAND & TOPSOIL, INC.          WASTE ACTION PROJECT

21   By                                     By
22   Dan Fruhling                           Greg Wingard
     President                              Executive Director
23
24
25
26

CONSENT DECREE
No. 2:17-cv-00498-RSM
2

# I.     ORDER AND DECREE

THIS MATTER came before the Court upon the foregoing stipulations of the parties. Having considered the stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1.     This Court has jurisdiction over the parties and subject matter of this action.

2.     Each signatory for the parties certifies for that party that he or she is fully authorized by the party or parties he or she represents to enter into the terms and conditions of this Consent Decree and to legally bind the party or parties, their successors in interest and assigns of the parties to it.

3.     This Consent Decree applies to and binds the parties and their successors in interest and assigns.

4.     This Consent Decree and any injunctive relief ordered within will apply to the operation and oversight by Fruhling of the Facility, which is currently subject to National Pollutant Discharge Elimination System Permit No. WAG503168 (the "NPDES permit"), but which lacks an NPDES permit authorizing the unpermitted pollutant discharge.

5.     This Consent Decree is a full and complete settlement and release of all the claims alleged in the second amended complaint and all other claims known or unknown and existing as of the date of the entry of this Consent Decree that could be asserted against Fruhling, its officers, management, employees, agents, successors and assigns under the Clean Water Act, 33 U.S.C. §§ 1251-1387, arising from the operation of or discharges from the Facility. Upon termination of this Consent Decree, these claims will be released and dismissed with prejudice.

6.     This Consent Decree is a settlement of certain disputed facts and law. This Consent Decree is not an admission or adjudication regarding any specific allegations by Waste Action Project in this case or of any conclusion of fact or law related to those allegations that remain undecided or unstipulated, nor evidence of any wrongdoing or misconduct on the part of Fruhling.

CONSENT DECREE
No. 2:17-cv-00498-RSM
3

*Smith & Lowney, p.l.l.c.*
*2317 East John St.*
*Seattle, Washington 98112*
*(206) 860-2883*

1    7.    The parties agree that the obligations undertaken under Paragraphs 8, 9 and 10 are

2    in full and complete satisfaction of all the claims covered by this decree.

3    8.    Injunctive Relief:

4         a.    Fruhling will comply fully with the terms and provisions of the NPDES

5    Permit at the Facility and any successor, modified, or replacement permit and any

6    additional NPDES permit issued for the Facility in the future.

7         b.    Fruhling will comply with the Agreed Order attached as Exhibit A,

8    including the Corrective Actions in Section IV of the Agreed Order.  In addition:

9              1.    Fruhling must, simultaneous with delivery of any and all

10   documents submitted to Ecology under the Agreed Order, send a copy to Waste

11   Action Project.

12             2.    Upon receipt of documents submitted under paragraph 8.b.1 of this

13   Consent Decree, Waste Action Project will have 30 days to provide Fruhling and

14   Ecology with comments.  Within 14 days of receiving Waste Action Project's

15   comments, Fruhling will respond to each comment in writing.  If Waste Action

16   Project's comments propose changes to any of Fruhling's submissions to

17   Ecology, Fruhling's response must adopt Waste Action Project's proposed

18   changes and promptly resubmit to Ecology, or provide detailed justification why

19   it believes the proposed changes are unnecessary or unreasonable.

20             3.    Fruhling will make all reasonable efforts to expeditiously obtain

21   Ecology approval for its plan to address its unpermitted pollutant discharge in

22   accordance with paragraphs IV 1) through 4) of the Agreed Order, as well as any

23   other necessary regulatory approvals or other agreements with third parties.  Upon

24   Ecology's approval of Fruhling's proposed plan, Fruhling will implement the plan

25   as soon as practicable.

26

CONSENT DECREE
No. 2:17-cv-00498-RSM
4

*Smith & Lowney, p.l.l.c.*
*2317 East John St.*
*Seattle, Washington 98112*
*(206) 860-2883*

1          c.        With respect to any contamination caused by the unpermitted pollutant

2    discharge that is not addressed by the Agreed Order and that is located outside the

3    boundaries of the Facility, Fruhling will comply with the requirements of the Model

4    Toxics Control Act (MTCA), Chapter 70.105D RCW and Ecology's implementing

5    regulations, Chapter 173-340 WAC.  Fruhling will promptly provide Waste Action

6    Project with copies of all sampling data obtained during this process, and notify Waste

7    Action Project within 7 days after it completes implementation of a cleanup action plan.

8          d.        Once per calendar quarter Fruhling will provide Waste Action Project with

9    progress updates describing the status of implementation of all activities performed under

10    this Paragraph 8 until complete.  These progress updates will be due to Waste Action

11    Project on the following dates for the prior calendar quarter: February 15th, May 15th,

12    August 15th and November 15th.

13          e.        Within thirty (30) days of entry of this Consent Decree, with a qualified

14    consultant, Fruhling will review and revise its Site Management Plan (SMP) to meet the

15    requirements of the Sand and Gravel General Permit as follows: (i) include on the

16    Facility site map the presence of any scrap metal pile, the location of the unpermitted

17    pollutant discharge, the drainage from near the entrance that flows to a Pond, and the

18    location of methane system components that generate condensate; (ii) include a directive

19    to identify any location that is designed to or used purposely to infiltrate stormwater as a

20    discharge point and monitor that location in accordance with the NPDES permit;  (iii)

21    develop procedures for monitoring and disposal of methane system condensate to prevent

22    discharges of condensate to the ground; (iv) revise the BMPs to include additional

23    sweeping at the Facility entrance to minimize sediment trackout; (v) after a review to

24    assess the sufficiency of the current SMP, including the sufficiency of the currently

25    selected Best Management Practices (BMPs), otherwise revise the SMP as necessary to

26    achieve compliance with the NPDES Permit.

CONSENT DECREE
No. 2:17-cv-00498-RSM
5

*Smith & Lowney, p.l.l.c.*
*2317 East John St.*
*Seattle, Washington 98112*
*(206) 860-2883*

1    f.      Within ten (10) days of entry of this Consent Decree, Fruhling will

2    prevent methane system condensate from discharging to the ground.

3    9.      Payment in Lieu of Penalty:

4            a.      Fruhling will make payments in the amount of the lesser of fifty percent

5    (50%) of the Net Proceeds on Sale of the Property or Four Hundred Thousand Dollars

6    ($400,000) ("the Payment in Lieu of Penalty").  "Net Proceeds on Sale of the Property"

7    means all proceeds of the sale of the Property remaining after satisfaction and payment of

8    all financial encumbrances on the Property, real estate excise taxes due in connection

9    with the sale, commissions, closing costs including escrow fees and costs of recording

10   and reconveyance, title insurance premiums, and the costs of litigation owed per

11   paragraph 10 of this Consent Decree.  If Fruhling contends the Payment in Lieu of

12   Penalty is less than $400,000, it will promptly provide Waste Action Project with copies

13   of all documentation used to calculate the Payment in Lieu of Penalty.  Payments towards

14   the Payment in Lieu of Penalty will be made to EarthCorps for environmental benefit

15   projects in the Swamp Creek watershed, as described in Exhibit B to this Consent Decree.

16   Checks will be made to the order of and delivered to EarthCorps, Attn: Steve Dubiel,

17   6310 NE 74th Street, Suite 201E, Seattle, WA 09115.  Payment shall include the

18   following reference in a cover letter or on the check: "Consent Decree, WAP v. Fruhling

19   Sand and Topsoil, Inc."  Fruhling will send copies of all checks and cover letters

20   simultaneously to Greg Wingard, Waste Action Project, P.O. Box 9281, Covington, WA

21   98042.  Fruhling will satisfy this obligation as follows:

22           b.      Fruhling will make monthly payments of Five Thousand Dollars ($5,000)

23   until it pays the entirety of the Payment in Lieu of Penalty.  These monthly payments will

24   be due on the first day of each month.  A check mailed and postmarked on or before the

25   first of the month will be considered timely.  For every day a payment is late, Fruhling

26   will pay an additional Twenty-Five Dollars ($25) as stipulated damages for late

*Smith & Lowney, p.l.l.c.*
*2317 East John St.*
*Seattle, Washington 98112*
*(206) 860-2883*

1  payments.  Fruhling may at any time pay the entire remaining balance of the Payment in

2  Lieu of Penalty, plus any accrued late fees, to satisfy its obligation under Paragraph 9.

3       c.     Fruhling's first monthly payment to EarthCorps will be due on the first of

4  the month following satisfaction of Fruhling's obligations in Paragraph 10, below.

5       d.     Fruhling commits to diligently pursue a sale of the Property and to

6  maximize the sale price.  Fruhling will pay any remaining balance of the Payment in Lieu

7  of Penalty, plus any accrued late fees, within seven (7) days of closing on any sale of the

8  Property.  Fruhling will within one (1) business day notify Waste Action Project when it

9  receives any written purchase offers (including the offer amount), when it executes a

10  purchase and sale agreement, and when the sale closes.

11  10.     Costs of Litigation:

12       a.     Fruhling will pay Waste Action Project's reasonable attorney and expert

13  fees and costs in the amount of Two Hundred Thousand Dollars ($200,000), pursuant to

14  the Promissory Note executed in favor of Smith & Lowney PLLC on December 24, 2019

15  and attached hereto as Exhibit C.  Checks will be made to the order of and delivered to

16  Smith & Lowney PLLC, 2317 E. John Street, Seattle, WA 98112, Attn: Knoll Lowney.

17  Fruhling will satisfy this obligation as follows, consistent with the Promissory Note:

18       b.     Fruhling will make monthly installment payments of Five Thousand

19  Dollars ($5,000) each month, commencing on the first day of the month following entry

20  of this Consent Decree.  The full balance, including any accrued interest and late fees

21  provided in the Promissory Note attached hereto as Exhibit C, will be due and payable on

22  the first day of the fortieth month after the first installment date, or seven (7) days after

23  the closing date for the sale of the Property, whichever occurs earlier.  Fruhling may at

24  any time pay the entire remaining balance of the $200,000 before the due date, plus any

25  accrued interest and late fees, to satisfy its obligation under Paragraph 10.

26

1            c.      Fruhling commits to pursue sale of the Facility and to maximize the sale

2     price.  Fruhling will within one (1) business day immediately notify Waste Action Project

3     when it receives any written purchase offers (including the offer amount), when it

4     executes a purchase and sale agreement and when the sale closes.

5        11.    The payments described under Paragraphs 9 and 10 above shall be in full and

6 complete satisfaction of any claims Waste Action Project has or may have against Fruhling,

7 either legal or equitable, and of any kind or nature whatsoever, for fees, expenses, and costs

8 incurred in this litigation, or for civil penalties, or payments in lieu of civil penalties pursuant to

9 a supplemental environmental project under the CWA, or relief of any nature whatsoever not

10 provided for in this Consent Decree.

11       12.    A force majeure event is any event outside the reasonable control of Fruhling that

12 causes a delay in performing tasks required by this decree that cannot be cured by due diligence.

13 Delay in performance of a task required by this decree caused by a force majeure event is not a

14 failure to comply with the terms of this decree, provided that Fruhling timely notifies Waste

15 Action Project of the event; the steps that Fruhling will take to perform the task; the projected

16 time that will be needed to complete the task; and the measures that have been taken or will be

17 taken to prevent or minimize any impacts to water quality resulting from delay in completing the

18 task.

19      Fruhling will notify Waste Action Project of the occurrence of a force majeure event as

20 soon as reasonably possible but, in any case, no later than fifteen (15) days after the occurrence

21 of the event.  In such event, the time for performance of the task will be extended for a

22 reasonable period of time following the force majeure event.

23      By way of example and not limitation, force majeure events include

24          a.      Acts of God, war, insurrection, or civil disturbance;

25          b.      Earthquakes, landslides, fire, floods;

26

*Smith & Lowney, p.l.l.c.*
*2317 East John St.*
*Seattle, Washington 98112*
*(206) 860-2883*

| | | |
|---|---|---|
| 1 | c. | Actions or inactions of third parties over which defendants have no |
| 2 | | control; |
| 3 | d. | Unusually adverse weather conditions; |
| 4 | e. | Restraint by court order or order of public authority; |
| 5 | f. | Strikes; |
| 6 | g. | Any permit or other approval sought by Fruhling from a government |
| 7 | | authority to implement any of the actions required by this consent decree |
| 8 | | where such approval is not granted or is delayed, and where Fruhling has |
| 9 | | timely and in good faith sought the permit or approval; and |
| 10 | h. | Litigation, arbitration, or mediation that causes delay. |

13. This Court retains jurisdiction over this matter. And, while this Consent Decree remains in force, this case may be reopened without filing fee so that the parties may apply to the Court for any further order that may be necessary to enforce compliance with this decree or to resolve any dispute regarding the terms or conditions of this Consent Decree. In the event of a dispute regarding implementation of, or compliance with, this Consent Decree, the parties must first attempt to resolve the dispute by meeting to discuss the dispute and any suggested measures for resolving the dispute.  The provisions of CWA section 505(d), 33 U.S.C. § 1365(d), regarding awards of costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, will apply to any proceedings seeking to enforce the terms and conditions of this Consent Decree.

15. The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. EPA.  Therefore, upon the filing of this Consent Decree by the parties, Waste Action Project will serve copies of it upon the Administration of the U.S. EPA and the Attorney General, with a copy to Fruhling.

CONSENT DECREE
No. 2:17-cv-00498-RSM
9

*Smith & Lowney, p.l.l.c.*
*2317 East John St.*
*Seattle, Washington 98112*
*(206) 860-2883*

1    16.    This Consent Decree will take effect upon entry by this Court.  Upon both (a)

2    satisfaction of the payment obligations under Paragraphs 9 and 10, and (b) issuance of any No

3    Further Action letter by Ecology with respect to the obligations under paragraph 8.c of this

4    Consent Decree, or after two years from the date of entry of this Consent Decree, whichever is

5    later, the parties shall jointly notify the Court and request termination of this Consent Decree and

6    dismissal of the case in accordance with Paragraph 5.  The parties by agreement may request

7    termination and dismissal after performance of both (a) and (b) above.

8    17.    All parties have participated in drafting this Consent Decree.

9    18.    This Consent Decree may be modified only upon the approval of the Court.

10    19.    If for any reason the Court should decline to approve this Consent Decree in the

11    form presented, this Consent Decree is voidable at the discretion of either party.  The parties

12    agree to continue negotiations in good faith in an attempt to cure any objection raised by the

13    Court to entry of this Consent Decree.

14    20.    All communications between the parties shall be through legal counsel.

15    Notifications or copies required by this Consent Decree to be made to Waste Action Project shall

16    be delivered electronically to:

17    Waste Action Project
      Attn: Greg Wingard

18    P.O. Box 9281,
      Covington, WA 98042

19    E-mail: gwingard@earthlink.net

20    Notifications required by this Consent Decree to be made to Fruhling shall be mailed to:

21    Dan Fruhling

22    Fruhling Sand & Topsoil, Inc.
      7534 NE 175th St #1

23    Kenmore, WA 98028
      E-mail: 59rockman@gmail.com

24

25    With a copy to:
      Douglas Morrison

26    Miller Nash Graham & Dunn

*Smith & Lowney, p.l.l.c.*
*2317 East John St.*
*Seattle, Washington 98112*
*(206) 860-2883*

1    2801 Alaskan Way #300
   Seattle WA 98121
2    E-mail: douglas.morrison@millernash.com

3      A notice or other communication regarding this Consent Decree will be effective when
4
received unless the notice or other communication is received after 5:00 p.m. on a business day,
5
or on a day that is not a business day, then the notice will be deemed received at 9:00 a.m. on the
6
7 next business day. A notice or other communication will be deemed to have been received: (a) if

8 it is delivered in person or sent by registered or certified mail or by nationally recognized

9 overnight courier, upon receipt as indicated by the date on the signed receipt; or (b) if the

10 receiving party rejects or otherwise refuses to accept it, or if it cannot be delivered because of a

11 change in address for which no notice was given, then upon that rejection, refusal, or inability to
12
deliver.
13

14      DATED this 24 day of February, 2020.

15

16

               RICARDO S. MARTINEZ
17                CHIEF UNITED STATES DISTRICT JUDGE

18

19

20
Presented by:
21

22 MILLER NASH GRAHAM & DUNN LLP     SMITH & LOWNEY PLLC

23                         By  s/Marc Zemel
    By  s/Douglas Morrison          Marc Zemel, WSBA #44325
24    Douglas Morrison, WSBA #18769    Attorneys for Plaintiff
   Attorneys for Defendant        Waste Action Project
25    Fruhling Sand & Topsoil, Inc.

26

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

4837-6461-4319.3

**EXHIBIT A**



**STATE OF WASHINGTON**
## DEPARTMENT OF ECOLOGY

*Northwest Regional Office • 3190 160th Ave SE • Bellevue, WA 98008-5452 • 425-649-7000*
*711 for Washington Relay Service • Persons with a speech disability can call 877-833-6341*

**OCT 2 2 2019**

Mr. Dan Fruhling, President
Fruhling Sand & Topsoil, Inc.
7524 NE 175th Street
Kenmore, WA 98028-3596

| Agreed Order Docket No. | 16479 |
|---|---|
| Site Location | 1010 228th Street SW Bothell, WA 98021 |

Re:     Agreed Order

Dear Mr. Fruhling:

Enclosed is a copy of the signed and effective Agreed Order number 16479. The enclosed Order may not be appealed. The Order is effective as of October 18, 2019.

Note that the Ecology contact listed in this Agreed Order, Jacob Carnes, will no longer be in this role as of October 25, 2019. If you have any questions concerning the content of the document, please contact Jerry Shervey at (425) 649-7293 or gshe461@ecy.wa.gov.

Sincerely,

Rachel McCrea

Rachel McCrea
Water Quality Section Manager
Northwest Regional Office
Washington State Department of Ecology

Enclosure:  Agreed Order No. 16479

By Certified Mail No.:  9171 9690 0935 0204 6821 77

cc:  Central Files, Fruhling Sand & Topsoil, Inc., Sand and Gravel General Permit No. WAG503168, WQ 6.4

ec:  Gerald Shervey, Ecology
       Jacob Carnes, Ecology
       Gretchen Onstad, Ecology
       Stacy Patterson, Farallon Consulting, spatterson@faralconsulting.com
       Daniel Fruhling, Fruhling Sand & Topsoil, 59rockman@gmail.com
       Larry Carron, Fruhling Sand & Topsoil, larry@fruhlinginc.com
       Douglas Morrison, Miller Nash Graham & Dunn LLP, douglas.morrison@millernash.com

STATE OF WASHINGTON
DEPARTMENT OF ECOLOGY

| | | |
|---|---|---|
| IN THE MATTER OF AN | ) | AGREED ORDER |
| ADMINISTRATIVE ORDER | ) | DOCKET NO. 16479 |
| AGAINST: | ) | |
| FRUHLING SAND & TOPSOIL, INC. | ) | |
| MR. DAN FRUHLING | ) | |

To:    Mr. Dan Fruhling, President
       Fruhling Sand & Topsoil, Inc.
       7524 NE 175th Street
       Kenmore, WA 98028-3596

| Agreed Order Docket No. | 16479 |
|---|---|
| Site Location | 1010 228th Street SW, Bothell, WA 98021 |

## I. INTRODUCTION

This is an Agreed Order between the Department of Ecology (Ecology) and Fruhling Sand &
Topsoil, Inc. (Fruhling) to achieve compliance with Sand and Gravel National Pollutant
Discharge Elimination System (NPDES) and State Waste Discharge General Permit number
WAG503168, RCW 90.48.080, WAC 173-201A-260, and WAC 173-216-040, by taking
certain actions which are described below to eliminate discharge from a buried pipe to
surface water.

## II. RECOGNITION OF ECOLOGY'S JURISDICTION

This Agreed Order is issued pursuant to the authority vested in Ecology by the Federal Water
Pollution Control Act (FWPCA), 33 U.S.C. sec 1311, et seq. and Chapter 90.48 Revised
Code of Washington (RCW).

RCW 90.48.030 provides that Ecology shall have the jurisdiction to control and prevent the
pollution of streams, lakes, rivers, ponds, inland waters, salt waters, water courses, other
surface and underground waters of the state of Washington.

RCW 90.48.120 authorizes Ecology to issue administrative orders requiring compliance
whenever it determines that a person has violated or created a substantial potential to violate
any provision of Chapter 90.48 RCW or fails to control the polluting content of waste to be
discharged to waters of the state.

Fruhling agrees to undertake all actions required of it by the terms and conditions of this
Agreed Order and not to contest Ecology's jurisdiction and authority to administer this
Agreed Order. Fruhling agrees not to appeal this Agreed Order.

Nothing in this Agreed Order shall in any way relieve Fruhling of its obligations to comply
with the requirements of its Permit. Nor shall anything in this Agreed Order limit Ecology's
authority to enforce the provisions of the aforementioned Permit. Nothing in this Order will
confer or designate compliance with the Model Toxics Control Act, WAC 173-340.

## III. FINDINGS OF FACT

Ecology's determination that a violation has occurred or may occur is based on the following facts.

This Agreed Order is being issued to Fruhling Sand & Topsoil, Inc. (Fruhling) to address a discharge of arsenic contaminated groundwater that is not subject to the monitoring requirements of the facility's Sand & Gravel General Permit number WAG503168 (Permit). The Fruhling facility is a reclaimed mine that recycles asphalt and concrete, and makes topsoil mixes.

The Sand and Gravel NPDES and State Waste Discharge General Permit was issued to all permit applicants on February 17, 2016, with a five-year effective period of April 1, 2016, through March 31, 2021. The Permit WAG503168 authorizes Fruhling to discharge Type 3 stormwater to Crystal Creek at monitoring point MP1, and to ground at monitoring points MP2 and MP3. The Type 3 stormwater discharge is subject to complying with the discharge limits and prohibitions set forth in special condition S1 of the Permit and all other special and general requirements specified in the Permit.

Fruhling Sand & Topsoil, Inc. is located on the site of a former mine that was active from 1952 to 1965. The areas of the site that were mined have been restored to elevations specified in the Department of Natural Resources reclamation permit #10402 and a settling pond in the interior of the mine was back-filled during reclamation. Fill materials have been placed at the site since approximately 1992. Fruhling has participated in Ecology's Voluntary Cleanup Program (VCP), under the Model Toxics Control Act, during two time periods as project numbers NW1665 from 8/16/2006 to 1/7/2008 and NW2657 from 11/20/2012 to 8/17/2018. Elevated levels of arsenic were detected on site in groundwater and surface water during both VCP participation periods. A letter from VCP to Fruhling, dated January 12, 2015, states that elevated levels of arsenic and iron in the groundwater are attributed to reducing conditions caused by degradation of wood placed in the fill materials.

On two separate occasions (2/1/2018 and 3/11/2019), Ecology inspectors have observed an orange residue in the drainage ditch (Photos 1 and 2) and native growth protection area (wetland, in Photos 3 and 4) that drains to Crystal Creek south of the Fruhling facility. The first inspection was unannounced in response to a citizen complaint regarding a groundwater seep discharging discolored water to the ditch and wetland adjoining homeowner properties. The second inspection was conducted by invitation from Fruhling to address violations identified in the first inspection. On May 24, 2019, split sampling was conducted by Fruhling and the Waste Action Project (WAP). Results in Table 1 show that arsenic was detected in the (end-of-pipe) water entering the drainage ditch and in the sediments of the drainage ditch. The total arsenic in the "end-of-pipe" sample exceeds the state and federal human health criteria for surface water (freshwater).

The discharge originates from a conveyance pipe that was originally installed to provide overflow drainage from a settling pond that was used when the site was actively mined, reclaimed, or both. The settling pond has been filled in, but the conveyance pipe remains buried in place. The discharge from the pipe flows to a manhole that discharges into several hundred feet of ditch that empties into a wetland designated as a native growth protection area. The water discharged from the conveyance pipe does not meet the Permit definition of

Type 2 stormwater, Type 3 stormwater, process water, or mine dewatering water, and
therefore is not subject to the monitoring requirements or effluent limits of the Permit.

**Table 1: Parameters measured in water and sediment samples at Fruhling on May 24, 2019**

| Sample Location | Sample Type | Measured Value (Fruhling) | Measured Value (WAP) |
|---|---|---|---|
| End of pipe | Water | 3.87 µg/L (dissolved Arsenic) | 4.88 µg/L (dissolved Arsenic) |
| | | 14.3 µg/L (Total Arsenic) | 13.2 µg/L (Total Arsenic) |
| Drainage Ditch | Sediment | 256 mg/Kg-dry (Arsenic) | 217 mg/Kg-dry (Arsenic) |
| | | 85.3 wt% (moisture) | 81.6 wt% (moisture) |

WAP = Waste Action Project

The water discharged from the buried conveyance pipe to the ditch system on the southwest side
of the property and the related accumulation of orange residue violates RCW 90.48.080, WAC
173-201A-260(2b), and WAC 173-216-040.

**RCW 90.48.080: Discharge of polluting matter in waters prohibited.**

It shall be unlawful for any person to throw, drain, run, or otherwise discharge into any of
the waters of this state, or to cause, permit or suffer to be thrown, run, drained, allowed to
seep or otherwise discharged into such waters any organic or inorganic matter that shall
cause or tend to cause pollution of such waters according to the determination of the
department, as provided for in this chapter.

**WAC 173-201A-260: Natural conditions and other water quality criteria and
applications.**

(2) **Toxics and aesthetics criteria.** The following narrative criteria apply to all existing
and designated uses for fresh and marine water: ...

(b) Aesthetic values must not be impaired by the presence of materials or their effects,
excluding those of natural origin, which offend the senses of sight, smell, touch, or
taste...

**WAC 173-216-040: Authorization required.**

(1) No waste materials may be discharged from any commercial or industrial operation
into waters of the state, or into any municipal sewerage system, nor may waste materials
be discharged from any municipal sewerage system into waters of the state, except as
authorized pursuant to this chapter, chapter 173-220 or 173-226 WAC.

(2) Any person who constructs or modifies or proposes to construct or modify wastewater
facilities must first comply with the regulations for submission of plans and reports for
construction of wastewater facilities, chapter 173-240 WAC.



**Photo #1:** Small ditch with orange residue behind 23033 11th Ave W, flowing northwest on 2/1/2018 [P1310101.JPG].



**Photo #2:** Orange residue observed in drainage ditch on 3/11/2019 [IMG_0589.JPG].



**Photo #3:** Orange residue flowed from the drainage ditch (north of 9th Pl W), entered the culvert, and drained to the native growth protection area (south of 9th Pl W) shown here on 2/1/2018 [P1310068.JPG].



**Photo #4:** Orange residue observed in the native growth protection area on 3/11/2019 [IMG_0587.JPG].

## IV. CORRECTIVE ACTIONS

For the reasons detailed above, and in accordance with RCW 90.48.120, IT IS AGREED that Fruhling shall take the following actions by the dates set forth below. These actions are necessary to satisfy the requirements of RCW 90.48.080, WAC 173-201A-260, and WAC 173-216-040. Fruhling has participated in defining these actions and the dates by which they shall be completed. Fruhling shall also submit permit applications and documents needing approvals from the various government agencies in a timely fashion in order that the dates for the various actions are able to be met.

Fruhling and Ecology are entering into this Agreed Order to address these violations. Fruhling prefers to eliminate the arsenic contaminated groundwater discharge to surface water by either treatment and infiltration, or routing to a sanitary sewer. If these options are not feasible, Fruhling will obtain an individual NPDES permit for discharge. Ecology requests that Fruhling prepare the following deliverables:

1) Within 90 days of the execution of this Agreed Order, Fruhling must complete a feasibility study of the three options for source control:

    A. Treatment and infiltration

    B. Discharge to sewer

    C. Individual NPDES Permit

2) If the feasibility study determines that option A or B is feasible, then Fruhling must submit, within 120 days of execution of this Agreed Order, a plan and a schedule for implementation of a treatment/infiltration system or sewer discharge connection.

3) If the study determines that options A and B are not feasible, then Fruhling must submit, within 180 days of execution of this Agreed Order, a new discharge application for an Individual NPDES Permit that includes a description of the proposed treatment system.

4) Upon startup of any treatment or infiltration system, Fruhling must submit an Operations and Maintenance Plan for the system.

5) Within 120 days of execution of this Agreed Order, Fruhling must submit a plan and schedule for removal and disposal of the soil layer discolored by orange residue in and near the ditch along the homeowner properties neighboring the mine property.

## V. PROGRESS REPORTING

Fruhling shall immediately notify Ecology of any occurrence which may result in noncompliance with the requirements of this Agreed Order. Such notifications shall state the nature of the potential noncompliance, the reason(s) therefore and the actions taken by Fruhling to address the potential noncompliance.

## VI. AMENDMENTS TO THE AGREED COMPLIANCE SCHEDULE

Amendments to the agreed compliance schedule may be requested for good cause. Extension of the deadline imposed by this Agreed Order is unlikely and will only be granted when requests for extensions are submitted in writing, in a timely fashion, and demonstrate good

cause for granting the extension. Failure to obtain financial assistance in the form of grants or loans shall not be considered good cause.

To be effective, all proposed amendments must be signed by the person with signature authority for each party.

## VII. EFFECTIVE DATE

This Order is effective on the date the agreement has been signed by both parties.

## VIII. TERMINATION OF THE AGREED ORDER

Upon completion by Fruhling of the actions identified in Section IV of this Agreed Order and issuance of a Notice of Compliance by Ecology, the requirements of this Agreed Order shall be deemed to be fulfilled and shall have no further effect on Fruhling.

## IX. DISPUTE RESOLUTION

If a dispute arises between Ecology and Fruhling regarding any noncompliance with this Agreed Order, the parties shall attempt to resolve the dispute by informal resolution. A dispute shall be considered to have arisen when one party notifies another, in writing, that there is a dispute. If the parties cannot resolve the dispute informally within thirty (30) days, Fruhling shall serve on Ecology a written Statement of Position. Within thirty (30) days after receipt of Fruhling's Statement of Position, Ecology shall provide Fruhling with a final administrative decision.

## X. ENFORCEMENT

Failure to comply with this Agreed Order may result in the issuance of civil penalties of up to $10,000 per day or other actions, whether administrative or judicial, to enforce the terms of this Agreed Order.

## XI. THIRD PARTY RIGHT TO APPEAL

By signing this Agreed Order, Fruhling may not appeal this Agreed Order, however, a third party may.

A party other than Fruhling has a right to appeal this Order to the Pollution Control Hearing Board (PCHB) within thirty (30) days of the date of receipt of this Order. The appeal process is governed by Chapter 43.21B RCW and Chapter 371-08 WAC. "Date of receipt" is defined in RCW 43.21B.001(2).

To appeal, you must do both of the following within thirty (30) days of the date of receipt of this Order:

- File your appeal and a copy of this Order with the PCHB (see addresses below). Filing means actual receipt by the PCHB during regular business hours.

- Serve a copy of your appeal and this Order on Ecology in paper form - by mail or in person. (See addresses below.) E-mail is not accepted.

You must also comply with other applicable requirements in Chapter 43.21B RCW and Chapter 371-08 WAC.

Your appeal alone will not stay the effectiveness of this Order. Stay requests must be submitted in accordance with RCW 43.21B.320.

## XII. ADDRESS AND LOCATION INFORMATION

| Street Addresses | Mailing Addresses |
|---|---|
| **Department of Ecology**<br>Attn: Appeals Processing Desk<br>300 Desmond Drive SE<br>Lacey, WA 98503 | **Department of Ecology**<br>Attn: Appeals Processing Desk<br>PO Box 47608<br>Olympia, WA 98504-7608 |
| **Pollution Control Hearings Board**<br>1111 Israel Road SW<br>STE 301<br>Tumwater, WA 98501 | **Pollution Control Hearings Board**<br>PO Box 40903<br>Olympia, WA 98504-0903 |

## XIII. CONTACT INFORMATION

Please direct all questions about this Order to:

Jacob Carnes
Sand and Gravel Permit Manager
Department of Ecology
Northwest Regional Office
3190 160th Avenue SE
Bellevue, WA 98008-5452

Phone: (425) 649-7289
Email: carj461@ecy.wa.gov

## XIV. MORE INFORMATION

- **Pollution Control Hearings Board Website:** http://www.eluho.wa.gov/Board/PCHB

- **Chapter 43.21B RCW - Environmental and Land Use Hearings Office – Pollution Control Hearings Board:** http://apps.leg.wa.gov/RCW/default.aspx?cite=43.21B

- **Chapter 371-08 WAC – Practice And Procedure:** http://apps.leg.wa.gov/WAC/default.aspx?cite=371-08

- **Chapter 34.05 RCW – Administrative Procedure Act:** http://apps.leg.wa.gov/RCW/default.aspx?cite=34.05

- **Ecology's Laws, rules, & rulemaking website:** https://ecology.wa.gov/About-us/How-we-operate/Laws-rules-rulemaking

## XV. SIGNATURES

Dan Fruhling
Fruhling Sand & Topsoil, Inc.

Date 10/15/19

Rachel McCrea
Water Quality Section Manager
Northwest Regional Office
Washington State Department of Ecology

Date 10/18/19



EXHIBIT B

December 19, 2019

RE: Waste Action Project v. Fruhling Sand & Topsoil, Inc.

To Whom It May Concern:

This letter is intended to provide assurance that I have received the Consent Decree between Waste Action Project and Fruhling Sand & Topsoil, Inc. ("Fruhling") and that I am authorized by my Board of Directors to make the following binding commitments on behalf of EarthCorps:

1. I understand that EarthCorps should receive funds from Fruhling as specified in the Consent Decree.
2. EarthCorps shall only use these Fruhling funds for environmentally beneficial projects which benefit the lands and waters of Puget Sound. We shall expend these funds working with partners wholly dedicated to supporting projects which benefit the water quality of Puget Sound focused in and around the Swamp Creek watershed.
3. Due to the location of the Fruhling in the Swamp Creek watershed, in selecting projects, EarthCorps shall target the funds towards projects located in or benefitting the Swamp Creek watershed. Furthermore, EarthCorps shall work with community partners to select projects that benefit not only the watershed, but also neighborhoods and communities impacted by environmental degradation in the area.
4. After funds have been disbursed, EarthCorps shall send a report to the Justice Department, the Court and the Parties describing how the funds were utilized and demonstrating conformance with the nexus of the Consent Decree.

EarthCorps is a community-based 501(c)3 nonprofit (Tax ID 91-1592017) organization dedicated to protecting and restoring local watershed lands. EarthCorps' mission is to develop leaders who strengthen community and restore the health of our environment. To fulfill this mission, EarthCorps raises money and secures funding to conduct the following activities:

- Implement habitat restoration and stewardship projects. Primary activities by EarthCorps have focused on invasive plant removal and installation of native plants and creation and stewardship of green stormwater infrastructure.
- Engage youth and community volunteers in hands-on stewardship.
- Train young adults for stewardship careers.
- Partner with government, nonprofit, and community organizations in carrying out our charitable purpose.
- EarthCorps does not support lobbying activities that are prohibited by Section 501(c)(3) of the IRS Code, and no portion of the Fruhling funds shall be used to support any political lobbying activities whatsoever.

EarthCorps is governed by a Board of Directors. EarthCorps is committed to sound fiscal management. EarthCorps contracts with an independent certified public accounting firm to conduct an audit annually. Please do not hesitate to contact me with questions or for additional information.

Sincerely,

Steve Dubiel
Executive Director

# EXHIBIT C
# WASHINGTON PROMISSORY NOTE
## (SECURED)

ON THIS 24th DAY OF December, 2019, Fruhling Sand & Topsoil, Inc., of 1010 228th Street SW, Bothell, WA, hereinafter known as the "Maker" promises to pay to Smith & Lowney, PLLC, of 2317 E. John St., Seattle, WA 98112, hereinafter known as the "Payee", the principal sum of TWO HUNDRED THOUSAND Dollars  ($200,000.00).

1.   **PAYMENTS:** Maker shall pay (check the applicable box)

☐ - **NO INSTALLMENTS.**  Payment in full of principal and interest accrued shall be payable on the due date.

X - **INSTALLMENTS** of principal and interest in the amount of FIVE THOUSAND Dollars ($5,000.00)

☐ - **INTEREST ONLY PAYMENTS** on the outstanding principal balance.

If installments or interest only payments are checked above, such installment payment shall be due and payable on the (check the applicable box)

X - First day of every **month** beginning on the first day of the month following court entry of the proposed consent decree in W.D. Wash Case No. 2:17-cv-00498-RSM.

☐ - Every **week** beginning on the _____ day of _____, 20___.

2.   **DUE DATE:** The full balance on this Note, including any accrued interest and late fees, is due and payable on the first day of the fortieth month after the first installment date above, or seven (7) days after the closing date for sale of 1010 228th Street SW, Bothell, WA, whichever occurs earlier.

3.   **INTEREST DUE IN THE EVENT OF DEFAULT:** In the event that the Maker fails to pay the note in full on the due date or has failed to make an installment payment due within 15 days of the due date, unpaid principal shall accrue interest at the rate of four and a half percent (4.5%) per annum OR the maximum rate allowed by law, whichever is less, until the Maker is no longer in default.

Copyright © 2016 by Promissory Notes.org

4. **ALLOCATION OF PAYMENTS:** Payments shall be first credited any late fees due, then to interest due and any remainder will be credited to principal.

5. **PREPAYMENT:** Maker may pre-pay this Note without penalty.

6. **LATE FEES:** If the Payee receives any installment payment more than ten days after the date that it is due, then a late payment fee of $25.00, shall be payable with the scheduled installment payment.  If the Payee receives any installment payment more than sixty days after the date that it is due, then a late payment fee of $525.00, shall be payable with the scheduled installment payment.

7. **DUE ON SALE:** This Note is secured by a security instrument described in Section 17 securing repayment of this Note. If Maker sells the property described in such security instrument, Payee may declare all sums due under this Note immediately due and payable, unless prohibited by applicable law.

8. **ACCELERATION:** If the Maker is in default under this Note or is in default under the security instrument securing repayment of this Note, and such default is not cured within thirty days after written notice of such default, then Payee may, at its option, declare all outstanding sums owed on this Note to be immediately due and payable, in addition to any other rights or remedies that Payee may have under the security instrument or state and federal law.

9. **ATTORNEYS' FEES AND COSTS:** Maker shall pay all costs incurred by Payee in collecting sums due under this Note after a default, including reasonable attorneys' fees. If Payee or Maker sues to enforce this Note or obtain a declaration of its rights hereunder, the prevailing party in any such proceeding shall be entitled to recover its reasonable attorneys' fees and costs incurred in the proceeding (including those incurred in any bankruptcy proceeding or appeal) from the non-prevailing party.

10. **WAIVER OF PRESENTMENTS:** Maker waives presentment for payment, notice of dishonor, protest and notice of protest.

11. **NON-WAIVER:** No failure or delay by Payee in exercising Payee's rights under this Note shall be considered a waiver of such rights.

12. **SEVERABILITY:** In the event that any provision herein is determined to be void or unenforceable for any reason, such determination shall not affect the validity or enforceability of any other provision, all of which shall remain in full force and effect.

13. **INTEGRATION:** There are no verbal or other agreements which modify or affect the terms of this Note. This Note may not be modified or amended except by written agreement signed by Maker and Payee.

Copyright © 2016 by Promissory Notes.org

14. **CONFLICTING TERMS:** In the event of any conflict between the terms of this Note and the terms of any security instrument securing payment of this Note, the terms of this Note shall prevail.

15. **NOTICE:** Any notices required or permitted to be given hereunder shall be given in writing and shall be delivered (a) in person, (b) by certified mail, postage prepaid, return receipt requested, (c) by facsimile, or (d) by a commercial overnight courier that guarantees next day delivery and provides a receipt, and such notices shall be made to the parties at the addresses listed below.

16. **EXECUTION:** The Maker executes this Note as a principal and not as a surety. If there is more than one Maker, each Maker shall be jointly and severally liable under this Note.

17. **SECURITY: THIS NOTE IS SECURED BY THE FOLLOWING:**

Maker's ownership interest in the real and personal property located at 1010 228th Street SW, Bothell, WA 98021.

### SIGNATURE AREA

This agreement was signed the 24th day of December , 20 19 by the following:

Knoll Lowney
**For Smith & Lowney, PLLC**

**Witness's** Signature

Kai McDavid
**Witness's** Printed Name

Dan Fruhling
**For Fruhling Sand & Topsoil, Inc.**

**Witness's** Signature

Julie Magaley
**Witness's** Printed Name

Copyright © 2016 by PromissoryNotes.org